# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **ANDY RAY VANDYKE, ET AL.,** | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:09CV00071 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **BRANDON HALL, ETC.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Robert M. Galumbeck, Dudley, Galumbeck, Necessary and Dennis, Tazewell, Virginia, for Plaintiffs; Henry S. Keuling-Stout, Keuling-Stout, P.C., Big Stone Gap, Virginia, for Defendant.*

In this civil action under 42 U.S.C.A. § 1983 (West 2003), the plaintiffs seek money damages from a police officer arising from their arrest and criminal charges. I find that the defendant is entitled to qualified immunity, and grant summary judgment in his favor.

I

The plaintiffs, Andy Ray Vandyke and his mother, Jean Vandyke ("Mrs. Vandyke"), accuse the defendant, Brandon Hall, a Buchanan County, Virginia, deputy sheriff, of unlawfully arresting them, using excessive force in the course of the arrest, and falsely charging them with criminal offenses of which they were later

acquitted by a jury. The defendant has moved for summary judgment. The motion has been briefed and argued and is ripe for decision.

Summary judgment should be entered when there is "no genuine issue as to any material fact," given the parties' burdens of proof at trial. Fed. R. Civ. P. 56(c)(2); *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In determining whether the moving party has shown that there is no genuine issue of material fact, a court must assess the factual evidence and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *See Ross v. Commc'ns Satellite Corp.,* 759 F.2d 355, 364 (4th Cir. 1985), *overruled on other grounds*, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

The facts of the case, either undisputed or, where disputed, recited in the light most favorable to the nonmovant on the summary judgment record, are as follows.[1]

On Halloween, October 31, 2007, Deputy Sheriff Brandon Hall, in uniform and driving an official vehicle, was on patrol in rural Buchanan County, Virginia, when, at about 5:00 P.M., he observed the plaintiff Andy Ray Vandyke, 37 years old, asleep

---

[1] In connection with the present motion, the parties have filed portions of the transcript of the plaintiffs' criminal trial, as well as certain affidavits. The plaintiffs generally object to the portions of the transcript filed by the defendant because they have not been authenticated. They appear as genuine as the plaintiffs' extracts, and the plaintiffs have not claimed that they are in error in any respect. In any event, the defendant has submitted an affidavit in which he incorporates his version of the events in question.

in his vehicle, parked several feet off of the highway. Deputy Hall pulled in behind the car to see if the driver needed assistance. He walked up and knocked on the side of the vehicle to awaken the driver.

Vandyke then woke up. He was "slobbering" (Trial Tr. 101) and his speech was slow and slurred. He told Deputy Hall that he had been sleeping. Deputy Hall asked him if he was on any medication and Vandyke said that he had taken two OxyContin tablets approximately three hours earlier. Vandyke put the keys in the ignition, but the officer stopped him and, believing that Vandyke was intoxicated, asked Vandyke to step out of the vehicle so that the deputy could administer a field sobriety test.

In fact, Vandyke, who had worked that day at the sawmill that he operates, had had a panic attack while driving home, where he lives with his parents. Vandyke is susceptible to such attacks, which cause him to slur his speech and "look[] weird," according to a family member. (*Id.* at 211.) He had pulled off of the road during this particular attack and was resting until he felt well enough to continue.

At this point, the participants' versions of events diverge. Deputy Hall contends that Vandyke tried to hit him with the door as he got out of the car and when asked by the officer to produce some identification, Vandyke said that he "didn't have any f****** ID." (*Id.* at 103.) According to the deputy, Vandyke then tried to walk

away, and when the officer grabbed him by the arm, Vandyke punched him in the face. When Deputy Hall told him that he was under arrest for assaulting a police officer, Vandyke tried to hit him again and resisted being placed in handcuffs.

In the meantime, Vandyke's mother became concerned that Vandyke had not arrived home and drove out in her car to find him. At some point during the altercation between the officer and Vandyke, she came to Vandyke's assistance. According to the officer, Mrs. Vandyke hit him on the back of his head five or six times as he attempted to place handcuffs on Vandyke. He told her to "back off" or he would pepper spray her and according to him, she replied, "[Y]ou spray me with that f****** s*** and I'll kill you." (*Id.* at 112.)

While attempting to arrest Vandyke, Deputy Hall pepper sprayed him several times, returning to his police car between pepper sprays to call on his radio for backup assistance.[2]

In his version of events, as he recounted at his criminal trial, Vandyke told the officer that he was not drunk, did not try to hit him with the car door or his fist, and did not swear at him. Vandyke agreed that he pulled away when the officer grabbed his right hand because the hand was crippled from a sawmill accident and caused him

---

[2] Deputy Hall testified that he could not remember if he had sprayed Vandyke two or three separate times. (*Id.* at 136.) Vandyke testified that he had been sprayed three or four times. (*Id.* at 196.)

great pain, particularly when bent.³ He said that while "wrestling" with Deputy Hall (*id.* at 192), his drivers' license fell to the ground, which appeared to anger the officer.

Vandyke testified that when the office had him by the hand, Mrs. Vandyke grabbed his other hand and pulled and began "screaming . . . turn him loose, you're, you're killing him, you're hurting his hand so bad that he can't stand it." (*Id.* at 195.) At this point the three of them fell to the ground. According to Mrs. Vandyke's testimony, this was when Deputy Hall began to spray Vandyke in the face with the pepper spray. She testified that the pepper spray also got on her as she was trying to protect Vandyke. She related that the pepper spray caused Vandyke "to go[] all to pieces." (*Id.* at 231.). She said that Vandyke asked for water to clean his face, but that Deputy Hall told him, "[W]e'll wash your eyes out when we get you to jail." (*Id.* at 231-32.) She denied that she had sworn at the officer.

At about this time, a neighbor, Kevin Blankenship, drove up to the scene and observed the officer pepper spraying Vandyke. Vandyke then became compliant, and Blankenship assisted Deputy Hall in placing Vandyke in the police car. Other officers arrived and Vandyke and Deputy Hall were taken to different hospitals.

---

³ Vandyke testified that he had undergone six surgeries on his hand. According to a witness at the criminal trial, Vandyke is missing three fingers on that hand. (*Id.* at 183.)

Vandyke was taken for pain in his hand and chest, and the officer was taken for a hyper extension of his elbow. Both were discharged later that evening.

Deputy Hall thereafter obtained warrants charging Vandyke with malicious wounding and resisting arrest, and Mrs. Vandyke with assaulting a police officer and obstructing justice. They were served with the warrants on November 29, 2007, but the charges were nolle prossed on March 3, 2008. On April 14, 2008, a state grand jury indicted them on the same charges, but on June 30, 2008, the charges were again nolle prossed.

On July 14, 2008, the state grand jury indicted Vandyke for assaulting a police officer, obstructing justice, and resisting arrest, and Mrs. Vandyke for assaulting a police officer and obstructing justice. Finally, on January 9, 2009, they were tried together by a jury and acquitted of all charges.

II

The defendant contends that he is entitled to summary judgment in his favor based on the doctrine of qualified immunity.

Police officers, like other government officials, are immune from civil liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

Consequently, qualified immunity attaches when the government actor's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Subjective intentions do not make the conduct illegal under the Constitution because the officer's state of mind does not invalidate his action as long as that action can be objectively justified. *See Whren v. United States*, 517 U.S. 806 (1996). Moreover, qualified immunity is "an *immunity from suit* rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

The defendant argues that under all of the circumstances, even in light of the disagreement as to some of the facts, a reasonable police officer in his position would be justified in acting as he did.

The United States Court of Appeals for the Fourth Circuit recently reiterated the legal standards used to consider assertions of qualified immunity in police excessive force cases, as follows:

> The Fourth Amendment's prohibition on unreasonable searches and seizures encompasses the right to be free of "seizures effectuated by excessive force." *Schultz v. Braga,* 455 F.3d 470, 476 (4th Cir. 2006).

> Whether a degree of force is reasonable is measured "by a standard of objective reasonableness." *Clem v. Corbeau,* 284 F.3d 543, 550 (4th Cir. 2002). Courts accordingly inquire "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor,* 490 U.S. 386, 397 (1989) . . . .
>
> Properly applying the test of objective reasonableness requires courts to give "careful attention to the facts and circumstances of each particular case." *Id.* at 396. The reasonableness of an officer's use of force is a fact-bound question, which turns on the "totality of the circumstances." *Young v. Prince George's County,* 355 F.3d 751, 757 (4th Cir. 2004). Determining "what a 'reasonable officer on the scene' would have done" thus depends on a careful weighing of all of the relevant facts. *Sigman v. Town of Chapel Hill,* 161 F.3d 782, 787 (4th Cir. 1998) (quoting *Graham,* 490 U.S. at 396). In other words, courts determining whether an application of force is objectively reasonable must consider "'the totality of the circumstances,'" which includes (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the officer or others, and (3) whether the suspect was attempting to resist or evade arrest. *Graham,* 490 U.S. at 396 (quoting *Tennessee v. Garner,* 471 U.S. 1, 9 (1985)). With all of the relevant circumstances before it, a court may then properly balance an individual's Fourth Amendment interests and the Government's countervailing law enforcement concerns. *See id.*

*Henry v. Purnell*, No. 08-7433, 2010 WL 3720411, at *6 (4th Cir. Sept. 24, 2010).

Considering all of the circumstances shown by the record, and even viewing the disputed facts in the light most favorable to the plaintiffs, I find that the defendant has shown that he is entitled to qualified immunity.

In the first place, there is no doubt that the officer was justified in requiring Vandyke to exit his car for an investigation. Even if the officer did not at that time

have sufficient evidence that Vandyke had operated the vehicle while intoxicated, *see Stevenson v. City of Falls Church*, 416 S.E.2d 435, 438 (Va. 1992) (holding that intoxicated person behind the steering wheel with key in the ignition but the engine off was insufficient evidence by itself that the person operated vehicle), he certainly had reasonable suspicion of such operation, sufficient to allow him to detain Vandyke and investigate the circumstances.[4] *See United States v. Sokolow*, 490 U.S. 1, 7 (1989) (holding that officers were justified in grabbing suspect by his arm and moving him back onto sidewalk when they had a reasonable suspicion that he was a drug courier). Of course, Deputy Hall did not know about Vandyke's history of panic attacks, and Vandyke's appearance, slurred speech, and admission that he had recently taken two powerful narcotic pain killers, gave Deputy Hall the lawful opportunity, if not the duty, to investigate further by detaining Vandyke.

Vandyke does not contest that he resisted Deputy Hall's efforts to detain him, although he contends that it was because Deputy Hall was hurting his hand. Again,

---

[4] Moreover, Vandyke admits that he actually turned the ignition on to roll up the window before exiting the car. (*Id.* at 191.) Where the electrical equipment of a vehicle is engaged, even with the engine off, there may be sufficient proof from that fact alone that the occupant is operating the vehicle while intoxicated. *See Nelson v. Commonwealth*, No. 21202-08-4, 2010 WL 342604, at *4 (Va. Ct. App. Feb. 2, 2010) (unpublished) (holding that sufficient evidence existed where intoxicated person was slumped over the driver's seat, with key in "accessory" position, and radio on, even though engine not running and car not in gear).

however, there is no evidence that Deputy Hall knew about Vandyke's hand injury. While Vandyke and his mother say that they complained to the deputy that he was hurting Vandyke's hand, there is nothing in the record to show that a reasonable police officer would have thought that their complaints were any more serious than what any police office might hear from a person being forcibly detained.

The uncontested facts show that Vandyke and his mother together resisted the officer's efforts to restrain Vandyke, causing them at one point to fall to the ground together amidst much screaming and commotion. Any reasonable police officer would fear loss of control of the situation under such circumstances. He would naturally fear that Vandyke or his mother, as agitated as they appeared, would try to take his firearm and perhaps cause deadly injury.

Besides taking Vandyke by the arm and attempting to handcuff him, it is also asserted that Deputy Hall violated Vandyke's rights by subjecting him to pepper spray. While the use of pepper spray may constitute excessive force under some circumstances, it has been held reasonable where a suspect is physically resisting arrest or attempts to flee. *See, e.g., Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 739 (11th Cir. 2010). "Indeed, pepper spray is a very reasonable alternative to escalating a physical struggle with an arrestee." *Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002).

The plaintiffs argue that Deputy Hall should not have subjected Vandyke to pepper spray on multiple occasions, but should have simply remained at his police car the first time he left Vandyke to call for backup. Perhaps in hindsight that would have been a better course of action, but police officers are not required to make a perfect decision in order to retain their immunity from paying civil damages. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

For these reasons, I find that Deputy Hall is entitled to qualified immunity as to the claims of violation of Fourth Amendment rights by virtue of his seizure of and use of force against Vandyke and his mother.[5] Accordingly, I will grant the Motion for Summary Judgment as to such claims.

---

[5] The plaintiffs also rely on the Eighth Amendment protection against cruel and unusual punishment as the basis for their excess force claims. However, reliance on the Eighth Amendment is only appropriate in cases involving convicted prisoners. *United States v. Hall*, 551 F.3d 257, 273 n.19 (4th Cir. 2009). Arrestees are protected by the Fourth Amendment and the standards imposed under that provision of the Constitution. *See Orem v. Rephann*, 523 F.3d 442, 445-46 (4th Cir. 2008).

III

The plaintiffs also assert four common law state claims arising out of these facts — the intentional torts of assault and battery, abuse of process, malicious prosecution, and intentional infliction of emotional harm. The defendant seeks summary judgment as to these claims.[6]

The defense of qualified immunity is also available under Virginia law to a police officer, although unlike its federal counterpart, it is an affirmative defense against liability, and does not provide immunity from suit. *See Jordan v. Shands*, 500 S.E.2d 215, 219 (Va. 1998). Nevertheless, based on the evidence in the summary judgment record, and for the reasons previously set forth, I find there is no genuine issue of any material fact as to such defense. Deputy Hall acted in good faith based on the facts as he knew them, and he is entitled to immunity from liability for the state law claims.

Moreover, I find that even if the claims went to trial, the plaintiffs would not be able to succeed on the merits. Deputy Hall lawfully detained Vandyke at the scene, either to investigate a possible intoxicated driving offense, or because he had

---

[6] While I have the discretion to dismiss without prejudice these pendent state claims once the federal claims are dismissed, 28 U.S.C.A. § 1367(c)(3) (West 2006), I find it appropriate to rule on them since the case has been fully developed and judicial economy would not be served by further litigation in state court, *see Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995).

probable cause to believe that Vandyke and his mother were forcibly resisting that detention, which they clearly were. Deputy Hall did not use unlawful or excessive force in attempting to restrain them and could not be found liable for assault or battery.

Under Virginia law, abuse of process occurs when regularly issued judicial process is used "to accomplish some ulterior purpose for which the procedure was not intended." *Donohoe Constr. Co. v. Mount Vernon Assocs.*, 369 S.E.2d 857, 862 (Va. 1988). The plaintiffs argue that Deputy Hall's purpose in having warrants served on them was to insulate himself from a later civil suit for using excessive force, but there is simply no evidence to support that supposition.

Similarly, there is no evidence that Deputy Hall initiated the prosecution of the plaintiffs with malicious intent. While malice may be inferred from the want of probable cause, *Lee v. Southland Corp.*, 244 S.E.2d 756, 759 (Va. 1978), the evidence shows that Deputy Hall did have probable cause to charge the plaintiffs. The fact that a jury saw fit to aquit them does not mean, of course, that there was not probable cause to initiate the prosecution.

Finally, I find that there is insufficient evidence to prove a claim for intentional infliction of emotional harm, since the conduct complained of was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991) (internal quotation marks and citation omitted).

For these reasons, I will also grant summary judgment for the defendant as to all of the state law claims asserted.

IV

The defendant's Motion for Summary Judgment will be granted and final judgment entered in his favor.

DATED: October 14, 2010

/s/ JAMES P. JONES
United States District Judge